Everett MORRIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A-17316.

Court of Criminal Appeals of Oklahoma.

May 31, 1972.

Jack N. Shears, Ponca City, for appellant.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., for appellee.

BUSSEY, Presiding Judge:

Appellant, Everett Morris, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Kay County, Oklahoma, for the offense of Driving an Automobile While Intoxicated; his punishment was fixed at six (6) months in the County Jail, and from said judgment and sentence, a timely appeal has been perfected to this Court.

Inasmuch as this cause must be reversed because of the accumulation of errors occurring at the trial, we do not deem it necessary to recite a detailed statement of facts. Suffice it to say that three Ponca City police officers observed the defendant driving his car in an erratic manner. Defendant refused to stop his vehicle and proceeded to his house and stopped his automobile in the back yard of his home. He refused to get out of the vehicle and the officers had to physically remove him from the car and place him in the police unit. The officers testified that in their opinion, the defendant was intoxicated. Defendant presented witnesses who testified that they were with the defendant during the day and they did not observe him drinking any intoxicants. Other defense witnesses testified that the defendant was physically abused by the officers and to the best of their knowledge, the defendant had not been drinking. The defendant did not testify.

We first observe that the arresting officer testified on direct examination in response to the following question: "Q. Did you book him? A. Yes, sir; we did, and we advised him of his rights and if he would consent to a breathalyzer or blood test." (Tr. 40) In dealing with a similar answer in Barnard v. State, Okl.Cr., 337 P.2d 768, we stated:

"The facts in the instant case do not bring it within the rule adopted in the Engler [1] case. Though this court does not approve of the voluntary statement of the officer which is bordering closely upon that forbidden in the Engler case, it does not go far enough to constitute error. The jury was not shown that defendant refused to take the test but the officer did say he was offered the test. Whether defendant took the test or refused it is not shown by the testimony. We cannot see where defendant was prejudiced to the extent of constituting error of a reversible nature."

Although the officer's voluntary response on direct examination was not sufficient to constitute reversible error in the instant case, the record reflects that the same officer was recalled in rebuttal and on re-cross-examination was asked the following question: "Q. Did you inquire as to his health problems—whether or not he had diabetes or heart trouble or anything else? A. Well, that's on the standard form of the breathalyzer test which he refused to take." (Tr. 384) We have previously held that permitting evidence in chief over objection that defendant charged with driving while under the influence of intoxicating liquor had refused to take sobriety tests is reversible error. Engler v. State, Okl.Cr., 316 P.2d 625; Jackson v. State, Okl.Cr., 397 P.2d 920; Simmons v. State, Okl.Cr., 485 P.2d 489.

Compounding these errors, we observe that although the defendant did not take the stand and place his reputation at issue, the prosecuting attorney cross-exam-

1. Engler v. State, Okl.Cr., 316 P.2d 625.

ined defendant's witnesses as to their knowledge that the defendant was an alcoholic as exampled by the following questions: "Q. Do you know whether his disabilities might include alcoholism?" (Tr. 184) "Q. Do you know whether he has a liver condition?" (Tr. 207) Defendant's wife was cross-examined in part as follows:

"Q. Does Everett drink?

"A. He hasn't drank for two years.

"Q. How long have you known Henry Buck?

"A. Oh, about two years.

"Q. And Henry hasn't drunk?

"A. I don't know about Henry.

"Q. During that time—excuse me—Everett hasn't drunk whiskey or beer during this time?

"A. No.

"Q. Did he drink prior to two years ago?

"A. He drank; the last he drank was in '69.

"Q. He has been drunk before, hasn't he?

"A. Not since '69.

"Q. He has been drunk in '69?

"A. You mean since '69?

"Q. No; in '69?

"A. Well, they said he was; I didn't see him." (Tr. 288)

■ We finally observe that although the date of the alleged offense was June 6, 1971, the State called Officer Goodman in rebuttal who testified as follows:

"Q. Do you know Everett Morris?

"A. Personally, you mean?

"Q. Yes. You know who he is?

"A. Yes.

"Q. Is he present here today?

"A. Appears to be; yes, sir.

" * * *

"Q. *Have you ever seen him intoxicated?*

"A. I sure have.

" * * *

"Q. Are you positive this is Everett Morris?

"A. I am not positive; no, sir.

" * * *

"Q. At one time, you knew there was a person by the name of Everett Morris, did you not?

"A. Yes, sir.

"Q. Can you tell us where that Everett Morris lived?

"A. At 615 South Fourth Street in the City of Ponca City, County of Kay, State of Oklahoma.

"Q. And can you tell us about when it was that you saw him intoxicated?

"A. On April 15 of *1969* approximately 12:51 p. m." (Tr. 358–359) (Emphasis added)

For all the foregoing reasons, the judgment and sentence must be reversed and remanded.

Reversed and remanded.

SIMMS and BRETT, JJ., concur.